OPINION
{¶ 1} Defendant-Appellant Brian A. Crawford appeals his conviction entered in the Richland County Court of Common Pleas following a no contest plea.
 {¶ 2} Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} The charges in this case involved the alleged sexual abuse by Defendant-Appellant of his two stepdaughters: Jessica and Brianna. The period of time alleged in the indictment as to when the sexual conduct took place was January 1, 1999, until April 25, 2005, with respect to Jessica, and with respect to Brianna, the time frame was from January 1, 2001, to on or about March 5, 2007.
 {¶ 4} There were a total of 6 children in the Crawford household. Stacy Crawford's oldest child was Jessica, and her second oldest child was Brianna. Both of these children were from fathers different from Brian Crawford, both of whom were deceased. The other children living in the home included Brandy, who was Mr. Crawford's child from a previous relationship, and three other younger children born as a result of the relationship between Defendant-Appellant and Stacy Crawford, those children being Mikalah, Brooklyn and Owen.
 {¶ 5} Brianna claims that Defendant-Appellant began to sexually abuse her when she was seven years old, while the family lived at 286 South Main Street in Mansfield, Ohio. The family was packing to move into their new home in Crestline when Defendant-Appellant called Brianna into his room. She claims that he exposed himself to her, told her to take off her clothes and touched her vaginal area and breasts. (T. at 309). Several weeks to a month later, while the family still lived in Mansfield, *Page 3 
Defendant-Appellant molested Brianna again, rubbing his penis against her vagina. (T. at 309-310).
 {¶ 6} In October, 2002, the family moved to 114 North Wiley Street in Crestline, Ohio, where the sexual abuse continued. According to Brianna, shortly after they moved, Defendant-Appellant began engaging in sexual intercourse with her on a weekly basis. (T. at 307-308). If Brianna was unable to have intercourse because she was on her period, Defendant-Appellant forced her to perform fellatio on him. (T. at 329).
 {¶ 7} The last incident of sexual abuse occurred on March 5, 2007. On that occasion, her mother was at work, and the Defendant-Appellant had put the other children to bed early. He then took Brianna down to his bedroom and engaged in sexual intercourse with her. (T. at 314-315).
 {¶ 8} On March 10, 2007, Brianna, then twelve years old, called her mother on the telephone from her grandmother's house and told her what the Defendant-Appellant had been doing to her. (T. at 303-305). Jessica, Brianna's fourteen year old sister, was in the car with her mother when Brianna called. (T. at 194). Jessica, who was not aware that Brianna had been sexually abused, had, until then, kept her own sexual abuse a secret. (T. at 191). However, when it appeared that her mother did not believe Brianna's claims, Jessica came forward and told her mother that the Defendant-Appellant had also sexually abused her from the time she was seven years old until she was twelve or thirteen years old. (T. at 187, 195, 247-248). According to Jessica, the abuse consisted of what Defendant-Appellant referred to as monthly "doctor checkups" where he would feel Jessica's breasts and digitally penetrate her vagina. (T. at 188-191, 218). *Page 4 
 {¶ 9} The authorities were notified and Crawford County Children Services conducted an investigation together with the Crestline Police Department. The Crestline Police Department asked the Mansfield Police Department to become involved.
 {¶ 10} Subsequently, the girls were sent to MedCentral Health System in Mansfield and on March 16, 2007, both girls had a SANE exam. The two nurses who performed the SANE exam, Jodie Flynn and Carol Rocks, both testified in this case in detail. Each testified that during the SANE examinations, it was discovered that Brianna had suffered hymenal tears and Jessica had suffered an injury to what is known as the posterior fourchette.
 {¶ 11} On March 10, 2007, Defendant-Appellant, Brian A. Crawford, was indicted by the Richland County Grand Jury on 8 counts of rape, 15 counts of sexual battery, and 20 counts of gross sexual imposition.
 {¶ 12} On October 31, 2007, the State of Ohio filed a Response to Request for Bill of Particulars.
 {¶ 13} The venue was claimed to be proper in the Richland County Common Pleas Court, since the crimes were claimed to be committed originally in Richland County, Ohio, and then continued as a course of criminal conduct in Crawford County, Ohio.
 {¶ 14} This case was tried to a jury on November 1, 2, 6, and 7, 2007.
 {¶ 15} The State presented the following witnesses: Jessica, Brianna, Linda Ewers, Officer Carolyn Young, Samantha Corbin, Kathryn Corbin, Deputy David Satterfield, Jodie Flynn, RN, Carol Rocks, RN, Jodi Miller and Detective Jeff Shook. *Page 5 
 {¶ 16} Appellant and Phyllis Shick testified on behalf of the defense.
 {¶ 17} During their testimony, Jessica and Brianna were unable to give specific dates as to when specific activity took place, however, they did give numerical estimates as to how often the alleged abuse occurred.
 {¶ 18} Defendant-Appellant also took the stand in this case, denying that he was guilty of any of these charges. Defendant-Appellant testified that there was friction in the home, that he did not get along well with Jessica or Brianna, and that there was resentment by the children toward him.
 {¶ 19} On November 8, 2007, the jury returned a verdict, finding Defendant-Appellant guilty of all 53 counts.
 {¶ 20} On November 9, 2007, Defendant-Appellant was sentenced on Counts One, Five, Nine, Fourteen, Twenty-four, and Thirty-four of the Indictment, for a total of 40 years. All other counts on which Defendant-Appellant was sentenced were to run concurrently with the Counts mentioned above. Further, Defendant-Appellant was placed on 5 years of post-release control.
 {¶ 21} Defendant-Appellant now appeals his conviction, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 22} "I. THE STATE FAILED TO ARTICULATE DIFFERENTIATION BETWEEN THE NUMEROUS COUNTS IN THE INDICTMENT FILED AGAINST THE DEFENDANT-APPELLANT, AND SUCH FAILURE DEPRIVED THE DEFENDANT-APPELLANT OF HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH, SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES *Page 6 
CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION.
 {¶ 23} "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FAILING TO EXCLUDE OUT-OF-COURT STATEMENTS MADE BY THE ALLEGED VICTIMS BEING INTRODUCED THROUGH THE TESTIMONY OF OTHER WITNESSES, IN VIOLATION OF EVIDENCE RULE 802 AND THE DEFENDANT'S RIGHT IS GUARANTEED TO HIM BY THEFIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
 {¶ 24} "III. DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL PROVIDED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION, AS WELL AS THE DUE PROCESS PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND IN ARTICLE 1 SECTION 16 OF THE OHIO CONSTITUTION."
 I. {¶ 25} In Appellant's first assignment of error, he argues that the indictment failed to charge each offense with enough specificity; which he claims deprived him of adequate notice of the offenses charged, deprived him of his right to due process and left him vulnerable to additional prosecution. We disagree.
 {¶ 26} Appellant argues that the indictments themselves, as well as the Bill of Particulars provided by the Prosecutor, do not give any specific dates as to when the alleged incidents of abuse occurred and that these counts are essentially "carbon copy" counts. Appellant asserts that the broadly worded charges of the indictment deprived *Page 7 
him of double jeopardy protection, and in support he relies upon a federal court decision, Valentine v. Konteh (C.A.6, 2005), 395 F.3d 626.
 {¶ 27} Valentine involved an indictment alleging 20 counts of child rape and 20 counts of felonious sexual penetration occurring over an eleven-month period. The offenses were identically alleged and no further information was included to differentiate one count from another. The Valentine court stated:
 {¶ 28} "In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place. Instead, the 8-year-old victim described `typical' abusive behavior by Valentine and then testified that the `typical' abuse occurred twenty or fifteen times. Outside of the victim's estimate, no evidence as to the number of incidents was presented." Id. at 632-633.
 {¶ 29} The Valentine court noted that, "[w]hen prosecutors opt to use such carbon-copy indictments, the defendant has neither adequate notice to defend himself, nor sufficient protection from double jeopardy. * * * Importantly, the constitutional error in this case is traceable not to the generic language of the individual counts of the indictment but to the fact that there was no differentiation among the counts."
 {¶ 30} Notably, the Valentine court did not rule out multiple-count indictments, finding instead that, "[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for the forty separate incidents either before or during the trial." Id. at 634.
 {¶ 31} In the present case, the record reflects that Matthews never challenged the sufficiency of this indictment at any time before or during his trial. In the absence of structural error, we note that this Court need not consider an error which was not called *Page 8 
to the attention of the trial court at a time when such error could have been avoided or corrected by the trial court. State v. Joseph (1995),73 Ohio St.3d 450, 455, 653 N.E.2d 285. Where a defendant fails to object to the form of the indictment before trial as required by Crim. R. 12(C), he waives all but plain error. State v. Van Voorhis, 3rd Dist. No. 8-07-23, 2008-Ohio-3224 citing State v. Frazier (1995),73 Ohio St.3d 323, 332, 652 N.E.2d 1000; State v. Skatzes, 104 Ohio St.3d 195,819 N.E.2d 215.
 {¶ 32} Notice of "plain error," however, is to be taken only with "the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91.
 {¶ 33} Pursuant to Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." State v. Barnes (2002), 94 Ohio St.3d 21, 27,759 N.E.2d 1240. In Barnes, the Ohio Supreme Court articulated a three-part test for the finding of plain error:
 {¶ 34} "First, there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim. R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." This aspect of the rule has been interpreted to mean that the trial court's error must have affected the outcome of the trial.Barnes, 94 Ohio St.3d at 27, 759 N.E.2d 1240 (internal citations omitted). Thus, "[o]nly extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." State v.Brown, 3rd Dist. No. 8-02-09, 2002-Ohio-4755 citing State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804 at paragraph three of the syllabus. Plain error does not exist *Page 9 
unless, but for the error, the outcome at trial would have been different. State v. Joseph (1995), 73 Ohio St.3d 450 at 455,653 N.E.2d 285.
 {¶ 35} It is with this framework in mind that we shall review the indictment in the case sub judice.
 {¶ 36} In State v. Bogan, Cuyahoga App. No. 84468, 2005-Ohio-3412, the Eighth District Court of Appeals noted that:
 {¶ 37} "Specificity as to the time and date of an offense is not required in an indictment. State v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632. Under R.C. 2941.03:
 {¶ 38} "an indictment or information is sufficient if it can be understood therefrom:
 {¶ 39} "* * *
 {¶ 40} "(E) That the offense was committed at some time prior to the time of filing of the indictment * * *."
 {¶ 41} An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged. Id. at ¶ 17-18."
 {¶ 42} Moreover, "where such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged." State v. Yaacov, Cuyahoga App. No. 86674, 2006-Ohio-5321, ¶ 17; see, also, State v. Gus, Cuyahoga App. No. 85591, 2005-Ohio-6717. This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged. Gus *Page 10 
at ¶ 6. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. State v. Mundy (1994),99 Ohio App.3d 275, 296, 650 N.E.2d 502; see State v. Robinette (Feb. 27, 1987), Morrow App. No. CA-652. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse." Robinette. Thus, "[a]n allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." Id.
 {¶ 43} We acknowledge that an exception to this general rule exists when the failure to allege a specific date "results in material detriment to the accused's ability to fairly defend himself, as where the accused asserts an alibi or claims that he was indisputably elsewhere during part, but not all, of the interval specified."Yaacov at ¶ 18, quoting State v. Morgan (May 11, 2001), Lucas App. No. L-00-1114. However, such is not the case here as Appellant does not assert an alibi, instead claiming that such abuse never took place and that the allegations of abuse are fabricated. Therefore, the failure to allege specific dates did not prejudice Appellant's ability to defend himself because his defense strategy centered on his claim that he never engaged in sexual conduct with either Jessica or Brianna, regardless of the date or place they alleged the abuse took place. See Yaacov; Statev. Bennett, Brown App. No. CA2004-09-028, 2005-Ohio-5898, ¶ 33 (remanded by In re Ohio Crim. Sentencing Statutes Cases, 109 Ohio St.3d 313,2006-Ohio-2109, 847 N.E.2d 1174); State v. Carnes, Brown App. No. CA2005-01-001, 2006-Ohio-2134; State v. Barnecut (1988),44 Ohio App.3d 149, 152, 542 N.E.2d 353;. State v. Ford, Cuyahoga App. No. 88236,2007-Ohio-2645, where the *Page 11 
Eighth District Court of Appeals affirmed the convictions from multi-count indictments, finding there was no due process violation because the defendant denied any sexual contact whatsoever with the victims; thus, the lack of specificity in the indictments as to specific dates or places of the alleged abuse did not result in prejudice to the defendant's defense.
 {¶ 44} In State v. Russell, Cuyahoga App. No. 88008, 2007-Ohio-2108, and State v. Rice, Cuyahoga App. No. 82547, 2005-Ohio-3393, the Eighth District Court of Appeals rejected challenges based onValentine where the testimony elicited from the child-victims provided sufficient differentiation among the counts.
 {¶ 45} In the instant case, the alleged abuse involved a repeated course of conduct which occurred in the victims' home over an extended period of time. The victims were able to describe certain isolated incidents which occurred on or near memorable events such as third grade orientation, moving to a new home, a tornado warning, and/or Christmas. The majority of the incidents of abuse were described as occurring weekly, in Brianna's case, or monthly, in Jessica's case. Jessica was able to state that the abuse began when she was about seven years old and continued until she was approximately twelve or thirteen. Brianna stated that Appellant began abusing her when she was approximately six or seven and continued up until March 10, 2007, when she was twelve years old.
 {¶ 46} Jessica described repeated incidents where Appellant touched her breasts and her vaginal area and also repeated incidents where he penetrated her vagina digitally. She testified that, with the exception of when she visited her Grandmother in *Page 12 
Chicago for three or four weeks during the summer, Appellant performed "doctor checkups" on her monthly for approximately five years.
 {¶ 47} Brianna described repeated incidents where Appellant touched her vagina, rubbed his penis against her vagina, penetrated her vagina digitally, had her perform fellatio on him, and engaged in sexual intercourse with her. Brianna testified that Appellant engaged in sexual intercourse with her weekly from the time she was seven until she reported the abuse, again approximately five years.
 {¶ 48} We find that the victims' testimony involved more than just descriptions of `typical' abusive behavior as found in theValentine case.
 {¶ 49} Based on the foregoing, we find that the jury could find that Appellant committed at least four counts of rape for each of the victims, ten counts of sexual battery involving Brianna and five counts of sexual battery as to Jessica and ten counts of gross sexual imposition as to each of the victims.
 {¶ 50} Our review of the record reveals that there is nothing to suggest that the outcome of the trial would have been different had the indictment specifically included dates of each incident of abuse. Accordingly, Appellant's first assignment of error is overruled.
 II. {¶ 51} In his second assignment of error, Appellant argues that the trial court erred in allowing out-of-court statements. We disagree.
 {¶ 52} Appellant initially states in this assignment that he assigns error to "the testimony of the two SANE nurses, the social worker and the police officer as to the statements made to them" by Jessica and Brianna. However, Appellant then goes on to *Page 13 
cite the Court only to statements made by the neighbors, Samantha and Kathryn Corbin, Jodi Miller, a social worker, and SANE nurse, Jodie Flynn.
 {¶ 53} During the state's case in chief, each of these witnesses testified that they had had a discussion with Jessica and/or Brianna, and stated what the girls had told them. Jessica and Brianna had already testified and were subjected to cross-examination. The trial testimony of these witnesses showed that the victims' statements to them were consistent with the victims' trial testimony.
 {¶ 54} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
 {¶ 55} Appellant argues that the testimony of the above witnesses was hearsay and should not have been allowed.
 {¶ 56} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). The rule also provides that some statements are not hearsay. Pertinent to this case, Evid. R. 801(D)(1)(b) states:
 {¶ 57} "A statement is not hearsay if:
 {¶ 58} "* * *
 {¶ 59} "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with *Page 14 
declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]"
 {¶ 60} Upon review of the record, we find that, during opening statements, defense counsel told the jury in pertinent part:
 {¶ 61} "We're basically going to show you that these two girls were so upset with him, wanted him out of the house, and have even expressed that since they didn't have a father the other kids didn't need a father either, that they felt this was a way to get rid of Brian.
 {¶ 62} "I don't believe they probably knew the magnitude of that they were doing, but once they got into it they have to run with it and it brought us to this courtroom today.
 {¶ 63} "I'm not going to go into great details any much more about what I said, but Brian entered a plea of not guilty when asked how he answered all these charges. He maintains his innocence and maintains that these girls are making this story up." (T. at 161-162).
 {¶ 64} It has previously been held that such implications during opening statements are sufficient to allow the State's use of Evid. R. 801(D)(1)(b). State v. Abdussatar, 8th Dist. No. 86406, 2006-Ohio-803,State v. Johnson (April 26, 1996), 2d Dist. No. 15253; State v.Hoskins (June 28, 1995), 2d Dist. No. 94-CA-42 ("attacking a victim's credibility during opening statement has been found to constitute grounds for permitting a prior consistent statement into evidence pursuant to Evid. R. 801(D)(1)(b).").
 {¶ 65} In light of defense counsel's opening statement, the testimony of Samantha and Kathryn Corbin, Jodi Miller, a social worker, and SANE nurse, Jodie *Page 15 
Flynn were not hearsay, as such testimony was offered to "rebut an express or implied charge of recent fabrication or improper influence or motive." We therefore find that the trial court did not abuse its discretion when it allowed these witnesses to testify about those statements.
 {¶ 66} Appellant's second assignment of error is overruled.
 III. {¶ 67} In his third assignment of error, Appellant argues that he was denied the effective assistance of counsel. We disagree.
 {¶ 68} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to Appellant. The second prong is whether Appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L .Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 69} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 70} In order to warrant a reversal, Appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors *Page 16 
were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable. Strickland 466 U.S. at 687; 694,104 S.Ct. at 2064; 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.;Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.Strickland, supra; Bradley, supra.
 {¶ 71} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 72} "The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" State v.Fears (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting State v.Holloway (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831.
 {¶ 73} Essentially, Appellant argues that his trial attorney's failures to raise in the trial court the same issues and arguments that he presents in his first and second assignments of error on appeal rendered trial counsel's performance ineffective. Appellant offers no additional grounds not addressed in the previous assignments of error.
 {¶ 74} As we have found no grounds for reversal of his conviction in Appellant's first or second assignments of error, we obviously do not consider his counsel ineffective in this regard. *Page 17 
 {¶ 75} None of the instances raised by Appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record Appellant cites in support of his claim that he was denied effective assistance of counsel, we find Appellant was not prejudiced by defense counsel's representation of him. The results of the trial were not unreliable, nor were the proceedings fundamentally unfair because of the performance of defense counsel.
 {¶ 76} Appellant's third assignment of error is overruled.
 {¶ 77} For the foregoing reasons, Appellant's conviction entered in the Richland County Court of Common Pleas is affirmed.
 Wise, J. Gwin, P. J., and Farmer, J., concur. *Page 18 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Costs assessed to Appellant. *Page 1